**Daniel E. OLVEDA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 015–81.**

Court of Criminal Appeals of Texas.

March 16, 1983.

Antonio G. Cantu, court appointed, David K. Chapman, San Antonio, Janet S. Morrow, Houston, for appellant.

Bill M. White, Dist. Atty., E. Dickenson Ryman, Anton Paul Hajek, III and Alan E. Battaglia, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ODOM, Judge.

Appellant was convicted of robbery and punishment was assessed at ten years. The Court of Appeals reversed the conviction in published opinion, 625 S.W.2d 13, that sustained appellant's only ground of error. The court held fundamental error was presented because the jury charge failed to include the statutory definition of the phrase "in the course of committing theft." V.T.C.A., Penal Code Sec. 29.01(1).

The Court of Appeals relied on *Rohlfing v. State,* 612 S.W.2d 598, in reaching its decision. In that case a panel of this Court held that omission of a definition of "in the

course of committing theft" did *not* constitute fundamental error. The Court of Appeals attempted to distinguish *Rohlfing* on the theory that the assaultive conduct there was made during the commission of theft, while the conduct here was committed in immediate flight from the theft. We find the distinction unpersuasive.

As noted in *Rohlfing,* when the statutory definition is not included in the charge, it is assumed the jury would consider the commonly understood meaning in its deliberations. Although error could result where the common meaning is more expansive than the statutory definition, such is not the case with the phrase "in the course of committing theft." Any possible misunderstanding of the phrase would have been more restrictive than the statutory definition, and could only have been to appellant's benefit. No reversible error is shown.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

CLINTON, Judge, concurring.

The majority opinion, as well as others in this cause and *Rohlfing v. State,* 612 S.W.2d 598 (Tex.Cr.App.1981), seems to have divined a "commonly understood meaning" of the statutory phrase "in the course of committing theft." The majority says it is "more restrictive than the statutory definition" in V.T.C.A. Penal Code, § 29.01(1), *viz:* "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft."

I am prepared to accept that "the definition of robbery under the 1974 Penal Code is broader than the one contained in Article 1408, [P.C.1925]," *Lightner v. State,* 535 S.W.2d 176, 177 (Tex.Cr.App.1976), but I cannot confidently say that there was or is any "common meaning" among laymen about either, nor declare with certainty what it is. But though there be one and whatever it is, Article 36.14, V.A.C.C.P. contemplates that jurors will be instructed as to the meaning of such applicable legal definitions which, being statutorily prescribed, are considered by the Code Construction Act, Article 5429b–2, § 2.01, to have acquired technical or particular meaning, Article 3.01, V.A.C.C.P., to the end that "the determination of the meaning of [legislative] enactments" is not relegated "to the publishers of dictionaries." *Milligan v. State,* 554 S.W.2d 192, 196 (Tex.Cr.App. 1977); *Watson v. State,* 548 S.W.2d 676, 679, n. 3 (Tex.Cr.App.1977).

Therefore, an appellate court reviewing a claim that a charge is defective for failure to instruct the jury on a specially prescribed definition that is, by statute, an essential element of the offense offends, or comes perilously close to offending, notions of due process and due course of law by assuming a jury would consider in its deliberations whatever the appellate court says is the commonly understood meaning of the term when that understanding is believed to be other than the legislative definition. The danger is demonstrated in this very cause: The San Antonio Court of Appeals made that assumption and found error; the majority makes that same assumption and finds no reversible error. Both draw on language in *Rohlfing v. State,* supra, at 602–603—a panel opinion that was not tested on rehearing. The Court of Appeals concludes "there is a substantial likelihood that the jury could have been misled into convicting appellant for robbery by finding him guilty of the elements of the offense of theft;" the majority opines that "[a]ny possible misunderstanding of the phrase ... could only have been to appellant's benefit." If *Rohlfing* can be read by reasonable judges to reach diametrically opposing results, that language should be reexamined rather than relied upon.

For my part, invoking rudimentary principles of law that the charge should instruct the jury to resolve issues tendered by the pleadings and raised by the evidence, I find that the application paragraph authorizes a conviction upon findings that are consonant with the indictment and evidence.

The indictment was cast in terms of V.T. C.A. Penal Code, § 29.02(a)(2)—"if, in the

course of committing theft ... and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." The application paragraph authorized the jury to convict if *inter alia* it believed that appellant

in the course of committing theft from the said Dolores Rossel, and with intent to obtain and maintain control of the said property without the consent of Dolores Rossel, intentionally and knowingly threatened and placed Andrew Dominquez in fear of imminent bodily injury and death you will find the defendant guilty."

The proof adduced by the State showed that appellant shoplifted two necklaces; Dolores Rossel attempted to stop him from leaving the store but, failing to do so, called for help; Andrew Dominquez, a stockboy, ran out after appellant; appellant stopped in an alley and turned on Dominguez with a knife; Dominguez retreated and returned to the store.

Faithful to the indictment and comporting with the evidence the application paragraph presented to the jury the law applicable to the facts of the matter. The jury, without regard to speculation concerning what its members commonly understood "in the course of committing theft" to mean, was asked to and could find every factual element of the offense alleged, including the only threat by assault shown to have been made by appellant upon Dominquez after stealthily taking property from the store managed by Rossel. There was no fundamental error in any of that. *Hill v. State,* 640 S.W.2d 879, 884–886 (Tex.Cr.App. 1982) (Dissenting opinion).

For the reasons given then, I join in the judgment of the Court.

MILLER, J., joins.

McCORMICK, Judge, concurring.

I concur in the holding of the majority that the failure of the trial court to include an instruction on the statutory definition of "in the course of committing theft" does not constitute fundamental error. How-

ever, the majority goes further and, via dicta, says that "[a]lthough error could result where the common meaning is more expansive than the statutory definition, such is not the case with the phrase 'in the course of committing theft.'" The exclusion of abstract definitions in the court's charge has not been recognized as one of the "fundamental errors" which can arise from the charge of the court. See *Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979). Absent an objection, such an omission is not reversible error.

CAMPBELL, J., joins in this concurrence.

TEAGUE, Judge, dissenting.

The majority, in its holding that "Any possible misunderstanding of the phrase [in the course of committing theft] would have been more restrictive than the statutory definition, and could only have been to appellant's benefit," has not properly considered the facts of this cause.

The undisputed facts in this cause reflect that the appellant, while in an S.H. Kress Company store in San Antonio, was seen by Delores Rossel, an employee of the store, shoplifting merchandise. Realizing that he had been seen, appellant fled the premises, but was pursued by Andre Dominquez, a fellow employee of Rossel, into an alley near the store. Appellant made no threats while inside the store. However, Dominquez testified that in the alley appellant "flashed" a knife toward him, causing Dominquez to return to the inside of the store. Appellant in his testimony denied "flashing" a knife toward Dominquez in the alley. Appellant was subsequently arrested at a location away from the store. The arresting officers returned him to the store for identification purposes. After appellant was returned to the store, he made threatening remarks to both Rossel and Dominquez.

Appellant was charged with the offense of robbery, with one element alleging that he intentionally and knowingly threatened and placed Dominquez in fear of bodily injury and death while in the course of

committing theft of property from Rossel. The statutory phrase, "in the course of committing theft," was not defined in the jury charge. Thus, although the jury was instructed that they had to find that the threat to Dominquez occurred in the course of committing theft, it was not informed what the phrase, "in the course of committing theft," legally means.

The San Antonio Court of Appeals correctly ruled that such omission was so prejudicial to the appellant that it was error calculated to injure the rights of the appellant, and ordered the conviction reversed. That Court stated the following: "It is not a matter of common understanding that the meaning of 'in the course of committing theft' may encompass conduct that occurs, as it did here, after the theft already had been completed. As a result, the jurors were instructed to decide whether appellant's threats occurred 'in the course of committing theft,' but were not apprised that this element could be satisfied by evidence that appellant was in flight from completed theft. Without an awareness of the fact that such circumstances could constitute robbery, there is a substantial likelihood that the jury could have been misled into convicting appellant for robbery by finding him guilty of the elements of the offense of theft." The San Antonio Court, in reaching its holding, used this Court's panel decision of *Rohlfing v. State*, 612 S.W.2d 598 (Tex.Cr.App.1981), as its linchpin.

*Rohlfing*, Id., held that such omission was not fundamental error because, of the three statutory meanings of the phrase, "in the course of committing theft," only the second meaning, "during the commission of theft," could have been applied to the facts of that cause. However, the facts here reflect that the jury could have found that the appellant committed the offense of theft from Rossel during which time appellant made no threats, but could have believed appellant's testimony that no threats were made in the alley, and also believed that appellant made threats after he was returned to the store by the arresting police officers.

I will now return to the parable mentioned in *Rohlfing*, Id.* Here, the jury was told they had to find it [in the course of committing theft] in order to convict appellant, but were not told what it [in the course of committing theft] looked like. I believe that it is reasonable that the twelve jurors in this cause, being without sufficient guidance in the form of an instruction defining the phrase, "in the course of committing theft," may very well have done in their deliberations what the six blind men of Nepal eventually did. However, they also may have arrived at their own definition of the phrase. Regardless, it would be

* The parable found in *Rohlfing* comes to us from Edmund C. Berkeley's "The Six Blind Men of Nepal," which is contained in his work *Ride the East Wind*. The parable concerned six blind men, each of whom had heard conflicting stories about a great beast, which trumpeted and was called the elephant. The elephant roamed the jungles of the lowlands of Nepal. The six blind men decided to make an investigation of just what the elephant looked like and the six thereafter ventured forth into the jungle. They subsequently found an elephant, which was asleep but soon awakened. Before the elephant awakened, each managed to touch the elephant. However, when the elephant awakened, the six blind men fled to safety. After they had returned to safety, they continued to argue over what they had come into contact with, with each making a conclusion, to-wit: one believed the elephant was like a tree trunk because he had felt the elephant's leg; one believed the elephant was like a string because he had felt the tail; one believed the elephant was like paper because he had felt the ear; one believed the elephant was like bone because he had felt the tusk; one believed the elephant was like a pig because he had felt the body; and one believed the elephant was like a snake because he had felt the trunk. The six blind men finally agreed upon six propositions: 1) By straining their imagination, they could imagine an animal that had two, or perhaps three, of these properties; 2) But they could not possibly conceive of an animal that had all six of these properties; 3) Therefore, as a beast, the elephant was impossible; 4) Certainly, it was as legendary as the unicorn or the griffin; 5) The trumpeting they had heard was undoubtedly a jungle illusion, that happened from time to time in the jungles of the lowlands of Nepal; and 6) Henceforth, they would forbid all discussion of the elephant—to avoid arguments, friction, and the waste of time.

presumptious for members of this Court to say what definition, if any, they used.

The majority by its opinion appears to imply that a reasonable interpretation or definition of the phrase, "in the course of committing theft," would be limited to "the commonly understood meaning" of the phrase. The majority, however, does not explain what the "commonly understood meaning" of the phrase might be as distinguished from the statutory definition; merely concluding that the "commonly understood meaning" does not clash with the statutory definition. It also concludes, without any explanation, that "Any possible misunderstanding of the phrase would have been more restrictive than the statutory definition, and could only have been to appellant's benefit."

Without benefit of any discussion by the majority in its opinion, I must conclude that it is holding that a reasonable definition of the phrase comports with the statutory phrase and the jury, being composed of reasonable persons, used the reasonable definition of the phrase. This, of course, clashes with the fact that as I interpret the opinion of the Court of Appeals, that Court also applied a reasonable or "common understanding" meaning to the phrase, and concluded that "It is not a matter of common understanding that the meaning of 'in the course of committing theft' may encompass conduct that occurs, as it did here, after the theft already had been completed."

What all of this means to me is that like the twelve justices involved in the California decisions of *People v. Carroll,* 1 Cal.3d 581, 83 Cal.Rptr. 176, 463 P.2d 400 (Sup.Ct. Cal.1970), also see *People v. Carroll,* 80 Cal. Reptr. 807 (Cal.Ct.App., Second Dis., Division 4, 1969), where they were concerned with the meaning of the phrase "during the commission of a robbery," but could not unanimously agree upon a definition or meaning for that phrase, I believe it is unfair to the lay persons who served as the jury in this cause to attribute to them a particular definition of the phrase, "in the course of committing robbery." On the

other hand, the collective majority, composed of wise and astute individuals, may only be holding that the three justices of the San Antonio Court of Appeals, who composed the panel that wrote its opinion, were not, as they are, more reasonable thinking men.

In any event, I respectfully dissent to the majority opinion and its holding, whatever that may be.