# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00784-CR

**James Ray Leach, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
### NO. CR6675, THE HONORABLE J. ALLEN GARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant James Ray Leach of the offense of family-violence assault by strangulation and assessed his punishment, enhanced by a prior felony conviction, at confinement for 20 years in the Texas Department of Criminal Justice and a $10,000 fine. *See* Tex. Penal Code §§ 12.42(a), 22.01(a)(1), (b)(2)(B). In two points of error on appeal, appellant complains about error in the jury charge. We find no reversible error. However, through our own review of the record, we have found non-reversible error in the written judgment of conviction. We will modify the judgment to correct the clerical error and, as modified, affirm the trial court's judgment of conviction.

## DISCUSSION[1]

During the charge conference at the end of the guilt-innocence phase of trial, appellant requested that the jury be instructed on the lesser-included offense of assault. The trial court denied the request. Appellant then sought the inclusion of a self-defense instruction. The trial court also denied that request. Appellant made no additional requests nor did he further object to the jury charge. On appeal, he raises two points of error complaining about error in the court's jury charge.

### Standard of Review

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If the jury charge error has been properly preserved by an objection or request for instruction, reversal is required if the appellant has suffered "some harm" from the error. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171; *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("If there was error and appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we limit recitation of the facts in this opinion to those necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

defendant,' which we have defined to mean that there is 'some harm.'"). When the error was not objected to, the error must be "fundamental" and requires reversal only if it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Almanza*, 686 S.W.2d at 171.

### Omission of Definition of Dating Relationship

Appellant first complains that the trial court's jury charge was erroneous because it did not include the statutory definition of "dating relationship" in the abstract portion of the charge.

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case," which requires that the jury be instructed on each element of the offense charged. *See* Tex. Code Crim. Proc. art. 36.14; *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) ("Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense."). The "law applicable to the case" includes the statutory definitions that affect the meaning of the elements of the offense. *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009). Thus, a trial court must communicate to the jury each statutory definition related to the charged offense. *See Villarreal*, 286 S.W.3d at 329; *see also Nejnaoui v. State*, 44 S.W.3d 111, 119 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("[T]he trial court must define any legal phrase that a jury must necessarily use in properly resolving the issues, and provide the statutory definition if available."). The court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The trial

3

court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Id.* at 488 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

In this case, appellant was charged with family-violence assault by strangulation. A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code § 22.01(a)(1). The offense is generally a Class A misdemeanor but is elevated to a third degree felony if (1) the offense is committed against a person with whom the defendant has or has had a "dating relationship," and (2) "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *See id.* § 22.01(b)(2)(B); Tex. Fam. Code § 71.0021(b). The Penal Code does not contain a definition of "dating relationship." Rather, section 22.01(b)(2) of the Penal Code incorporates by reference section 71.0021(b) of the Family Code. *See* Tex. Penal Code § 22.01(b)(2). That statutory section provides that "dating relationship" means "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature."[2] Tex. Fam. Code § 71.0021(b).

Because the term "dating relationship" has been statutorily defined in the Family Code and extended to the Penal Code in the family-violence-assault-by-strangulation offense, the trial court's failure to include the definition in the jury charge was error. The State concedes that it was error not to include the statutory definition, and appellant acknowledges that he did not object

---

[2] The statute also describes the considerations relevant to the determination of whether a dating relationship exists: "(1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship[,]" and provides that a "casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a 'dating relationship.'" *See* Tex. Fam. Code § 71.0021(b), (c).

4

to its omission during trial.  Accordingly, appellant is entitled to reversal only if the error resulted in egregious harm.  *See Villarreal*, 453 S.W.3d at 433.

Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.  *Id.*; *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).  "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'"  *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)); *see Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) ("[Egregious harm] is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial.").  We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Villarreal*, 453 S.W.3d at 433; *see Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) ("An egregious harm determination must be based on a finding of actual rather than theoretical harm."); *see also* Tex. Code Crim. Proc. art. 36.19 (when requirements of article 36.141 have not been met, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial").  In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole.  *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.

In this case, the jury charge reflects that the trial court properly instructed the jury in both the abstract and the application paragraphs that to convict appellant of the assault offense charged it must find that the assault was committed against a person with whom appellant had a dating relationship. The abstract portion of the charge read as follows:

> A person commits the felony offense of assault/family violence by impeding if the person commits the offense of assault as hereinafter defined, against a member of the family or household of the defendant or a person the defendant had or had had a dating relationship, and the offense is committed by intentionally, knowingly or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.

Similarly, the application paragraph of the charge instructed the jury that if it found from the evidence beyond a reasonable doubt that appellant

> did then and there intentionally, knowingly or recklessly cause bodily injury to Melanie Goodwin Deloach by impeding the normal breathing or circulation of the blood of the said Melanie Goodwin Deloach by applying pressure to her throat or neck or by blocking her nose or mouth, and the said Melanie Goodwin Deloach was a person with whom the said [appellant] had or had had a dating relationship, you will find the defendant guilty of the felony offense of the [sic] ASSAULT/FAMILY VIOLENCE BY IMPEDING, but if you do not so believe or if you have a reasonable doubt thereof, you will acquit the defendant of the felony offense of ASSAULT/FAMILY VIOLENCE BY IMPEDING, and say by your verdict "not guilty" to that offense.

Thus, even though "dating relationship" was not defined, the charge adequately described the offense and included all of the elements. *See Rohlfing v. State*, 612 S.W.2d 598, 602–03 (Tex. Crim. App. 1981) (failure to define statutory element was harmless error because element was not omitted from charge and charge did not authorize conviction without finding all elements of the offense); *Lovings*

6

*v. State*, 376 S.W.3d 328, 337–38 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (failure to include definition of "without consent" in sexual assault prosecution did not cause egregious harm; jury charge "included all of the elements of the offense and consequently was not fundamentally defective"). A review of the entire court's charge in this case reveals that, aside from the omission of the statutory definition, the balance of the charge properly sets forth the elements of the offense and the application paragraph is legally correct in its application of the law to the facts of the case. Overall, the jury charge does not support a finding of egregious harm.

Moreover, while the statutory definition of "dating relationship" was not included in the abstract portion of the charge, the Family Code's definition of "dating relationship" is not significantly different from its commonly understood definition. When a statutory term is not defined in the jury charge, we assume that the jury considered the commonly understood meaning of the term in its deliberations. *Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983); *Nejnaoui*, 44 S.W.3d at 120.

As noted above, the statutory definition of "dating relationship" is "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *See* Tex. Fam. Code § 71.0021(b). Like both the State and appellant, we observe that there is no dictionary definition for the phrase "dating relationship." *See Olveda*, 650 S.W.2d at 409 (referring to dictionary definition to determine commonly understood meaning). However, the dictionary defines "relationship" as "the way in which two or more people talk to, behave toward, and deal with each other" and as "a romantic or sexual friendship between two people." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/relationship (last

7

visited Nov. 13, 2015). The dictionary defines the noun "date" as "(a) an appointment to meet at a specified time; especially: a social engagement between two persons that often has a romantic character, (b) a person with whom one has a usually romantic date." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/date (last visited Nov. 13, 2015). It defines the verb "date" as "to do an activity with someone you might have a romantic relationship with: to go on a date or several dates with (someone)." *Id.*

Appellant contends that the "the term 'dating relationship' has a detailed statutory definition that is more narrow than ordinary usage." We disagree. Based on the dictionary definitions of "date" and "relationship," a "dating relationship" would be commonly understood to mean an ongoing association between two people with a romantic aspect or involving intimate behavior. Likewise, the statutory definition of "dating relationship" describes a continuing "romantic or intimate" relationship. We see no meaningful distinction between the two definitions.

With regard to the second factor concerning the "state of the evidence," the victim, Melanie Deloach, testified that she and appellant were in a "boyfriend/girlfriend" relationship for about two months. During that time they lived together "just being a couple": they shared a bedroom, slept in the same bed, engaged in sexual intercourse, and shared their daily routine, including household activities such as cooking, cleaning, and laundry.[3] In addition to sexual intimacy, Deloach's testimony described a romantic aspect to their relationship. She testified that appellant expressed his love for her and brought her flowers that he had picked. She also indicated

---

[3] Deloach testified that she and appellant were homeless during that time but lived with friends. She clarified on cross examination that she and appellant lived together in two different places, first living with one friend then staying with another.

that some of the volatile nature of their relationship was due to his jealousy. Deloach's testimony also established that during the course of their relationship she and appellant did drugs together.

The only testimony regarding the nature of appellant's relationship with Deloach came from Deloach.[4] There was no contradictory evidence presented. Although appellant attempted to dispute the nature of their relationship, suggesting that the basis of appellant's relationship with Deloach was drug use not romance, he did not dispute Deloach's description of the activities they engaged in nor did he offer any evidence contradicting that they were "boyfriend and girlfriend" and had a sexual relationship. Appellant never attempted to cross-examine Deloach regarding whether they lived together, slept in the same bed, engaged in sexual activities,[5] or had romantic feelings for each other.

Appellant argues that based on the evidence of drug use during their association, the jury could conclude that he was not involved in a "dating relationship" with Deloach. However, he concedes that evidence was admitted from which the jury could determine that the two were involved in a "dating relationship." The fact that drug usage was involved in their activities together does not detract from the other aspects of their intimate relationship. We conclude that the state of the evidence does not support a finding of egregious harm.

---

[4] Deloach's testimony regarding the nature of her relationship with appellant was corroborated to some degree by the emergency room nurse who examined Deloach after the assault. The nurse testified that during the hospital examination Deloach told her "that she had been assaulted by her boyfriend."

[5] In fact, at trial appellant essentially conceded the sexual aspect of his relationship with Deloach when he suggested that Deloach's injuries could have been sustained when the couple engaged in "rough sex."

9

Next, we look at the final arguments presented by the State and appellant's attorney. During the State's closing argument, the prosecutor argued that the evidence proved all of the elements of the assault offense charged, including a "dating relationship" between appellant and Deloach. In his closing argument, defense counsel characterized the relationship between appellant and Deloach as a mutually exploitative association of drug addicts. Counsel maintained that the relationship was not a "dating relationship" because the two did not go on traditional social outings usually associated with dating (i.e., going to the movies, going to the bowling alley, or going to sports events) but were merely doing drugs and having sex. In rebuttal, the prosecutor asserted that the testimony that appellant was Deloach's boyfriend (from Deloach and the ER nurse) satisfied the requirement of a "dating relationship." Although both parties mentioned "dating relationship," neither the State nor appellant argued the definition of "dating relationship" or suggested that such a relationship was anything other than as defined by the Family Code. Further, their arguments were consistent with both the statutory definition of "dating relationship" as well as the common understanding of the phrase. The arguments of counsel do not support a finding of egregious harm.

As to the fourth factor, our review of the record has disclosed no other relevant information that requires our consideration.

In sum, the combined dictionary meanings of the terms "date" and "relationship" reflect a commonly understood meaning of the phrase "dating relationship" that closely resembles the statutory definition of "dating relationship" in section 71.0021(b) of the Family Code. *See Nejnaoui*, 44 S.W.3d at 120 (holding that that "[t]he statutory definition of conduct is 'neither complex nor unusual, and the definition is much like the common meaning of the word'") (quoting

10

*Smith v. State*, 959 S.W.2d 1, 25 (Tex. App.—Waco 1997, pet. ref'd)). Furthermore, nothing in the record indicates the jury's verdict was based on facts that would *not* constitute a "dating relationship" under the statutory definition of section 71.0021(b). The evidence at trial was sufficient to establish that appellant's involvement with Deloach—which included an ongoing sexually intimate relationship—constituted a "dating relationship" as that term is statutorily defined. Also, nothing in the record indicates that the lack of a definition would have confused the jury or caused the jury to misapply the law. *See Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) ("[The] failure to give an abstract instruction is reversible only when such an instruction is necessary to correct or complete understanding of concepts or terms in the application part of the charge."). Moreover, the record clearly establishes that all parties, including appellant, understood the concept of what a "dating relationship" was but simply disputed whether the evidentiary facts sufficed to demonstrate that type of relationship.

On this record, in view of the jury charge submitted and the uncontroverted evidence regarding appellant's relationship with Deloach, we conclude that although the trial court erred by omitting the statutory definition of "dating relationship" from the jury charge, such error did not deny appellant a fair and impartial trial. Appellant did not suffer egregious harm. Accordingly, we overrule appellant's first point of error.

**Lesser-Included Offense Instruction**

In his second point of error, appellant argues that the trial court erred in denying his requested jury instruction on the lesser-included offense of assault.

11

At trial, appellant requested that the jury be instructed on "assault," without referencing which particular type of assault.[6] From the context of his argument during the charge conference, it appears he was arguing for an instruction on assault causing bodily injury. *See* Tex. Penal Code § 22.01(a)(1). Appellant argued that he was entitled to the instruction on the lesser offense because "the evidence shows that the parties involved in this were basically two drug abusers who didn't really have the requisite relationship" and because the fact that Deloach was an admitted drug user meant it was "just as likely [she] could have been passing out because of drug abuse" and not because appellant impeded her breathing or circulation.[7]

Determining whether a defendant is entitled to a lesser-included-offense instruction requires a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *see State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013). We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535. If so, we must decide whether the admitted evidence supports the instruction. *Goad*, 354 S.W.3d at 446; *Rice*, 333 S.W.3d at 144.

---

[6] The assault statute sets out three separate and distinct assaultive crimes: bodily-injury assault, assault by threat, and offensive-contact assault. *See* Tex. Penal Code § 22.01(a)(1)–(3); *Landrian v. State*, 268 S.W.3d 532, 536, 540 (Tex. Crim. App. 2008).

[7] On appeal, appellant makes no argument concerning the strangulation element, so we do not address it here.

12

Neither party disputes that assault causing bodily injury is a lesser-included offense of family-violence assault by strangulation as charged in the indictment here.[8] *See* Tex. Code Crim. Proc. art. 37.09(1); *see also* Tex. Penal Code § 22.01. Thus, we proceed to the second prong. Under this prong, we must determine if there is some evidence in the record that would permit a jury to rationally find that, if appellant is guilty, he is guilty only of the lesser-included offense. *Meru*, 414 S.W.3d at 163; *Rice*, 333 S.W.3d at 145. The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536); *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008). We consider all of the evidence admitted at trial, not just the evidence presented by the defendant. *Goad*, 354 S.W.3d at 446; *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Wortham v. State*, 412 S.W.3d 552, 558 (Tex. Crim. App. 2013); *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). We may not consider the credibility of the evidence or whether it conflicts with other evidence or is controverted. *Goad*, 354 S.W.3d at 446–47. However, "it is not enough that

---

[8] Section 22.01 of the Texas Penal Code describes family-violence assault by strangulation as assault causing bodily injury (an assault under section 22.01(a)(1)) with two additional requirements: (1) that it be committed against "a person whose relationship to or association with the defendant is described by Section 71.0021(b) (defining "dating relationship"), 71.003 (defining "family" members), or 71.005 (defining "household" members), Family Code," and (2) that it be committed "by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth," (i.e., by strangulation). *See* Tex. Penal Code § 22.01(a), (b)(2)(B). Thus, the misdemeanor assault at issue here is established by proof of the same or less than all the facts required to establish the commission of the family-violence assault by strangulation charged. *See* Tex. Code Crim. Proc. art. 37.09(1); *see also State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013).

13

the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed*, 351 S.W.3d at 68 (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)); *see Williams v. State*, 294 S.W.3d 674, 681 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("There must be affirmative evidence in the record raising the lesser offense before an instruction is warranted."). "Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012); *see Wortham*, 412 S.W.3d at 558 ("[S]uch evidence cannot be mere speculation—it must consist of affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense.").

To warrant a lesser-included-offense instruction on assault here, there must be some affirmative evidence in the record demonstrating that appellant was not in a "dating relationship" with Deloach. Appellant directs us to none. On appeal, appellant argues that he was entitled to the instruction on assault because the evidence showed "a relationship based primarily on migrations between places where the two could use drugs" so a jury could have "validly and rationally found the drug house peregrinations of appellant and the complainant were a casual relationship centered on drug use, rather than dating." We disagree that the evidence of drug use negates the "dating relationship" element of the greater offense.

Appellant is correct that the record contains evidence showing that one of the primary activities appellant and Deloach participated in was doing drugs together. While an association

14

based *solely* on drug use may, perhaps, demonstrate a "casual relationship" rather than a "dating relationship," that is not what the evidence in this case showed. Rather, the evidence demonstrated that in addition to using drugs together, appellant and Deloach were "boyfriend and girlfriend" and lived together as a couple, sharing their daily routines, sleeping in the same bed, and engaging in sexual activities. The evidence of their drug use does not contradict the evidence of the other activities the two engaged in, which demonstrated that they were involved in a romantic and sexually intimate relationship, i.e., a "dating relationship." Appellant's argument is essentially that the jury could have simply disbelieved the evidence demonstrating appellant's sexually intimate and romantic relationship with Deloach. This speculation does not suffice as evidence to support the lesser-included offense instruction. *See Sweed*, 351 S.W.3d at 68 ("[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted."). No evidence in the record—including the evidence of drug use—negates or rebuts the evidence of the intimate sexual nature of appellant's relationship with Deloach.

The evidence appellant relies on—the repeated drug use during their relationship and the lack of traditional social outings—does not negate appellant's "dating relationship" with Deloach and thus does not establish the lesser-included offense as a valid, rational alternative. *See Rice*, 333 S.W.3d at 145. Given the uncontroverted evidence demonstrating the intimate and sexual nature of appellant's relationship with Deloach, we conclude that no rational jury could find that appellant was guilty only of the lesser offense of assault. Accordingly, the trial court's denial of the requested

15

instruction in the jury charge does not constitute error. Because we find no error in the jury charge, we need not conduct a harm analysis. *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013); *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009). We overrule appellant's second point of error.

## Clerical Error in Judgment

On review of the record we observe that the written judgment of conviction in this case contains a clerical error. The judgment of conviction states that the "Statute for Offense" is "22.01(a)(2)(B) Penal Code." The applicable statutory provisions for the offense as alleged in the indictment here, however, are section 22.01(a)(1), (b)(2)(B) of the Penal Code. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment to reflect that the "Statute for Offense" is "22.01(a)(1), (b)(2)(B) Penal Code."

## CONCLUSION

We conclude that appellant did not suffer egregious harm due to the omission of the statutory definition of "dating relationship" in the jury charge. We further conclude that the trial court did not err in denying appellant's requested jury charge instruction on the lesser-included offense of assault. Accordingly, we modify the judgment of conviction as noted above and affirm the judgment as modified.

16

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Modified and, as Modified, Affirmed

Filed:   December 9, 2015

Do Not Publish