ACCEPTED
14-14-00514-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
3/23/2015 2:07:47 PM
CHRISTOPHER PRINE
CLERK

**No. 14-14-00514-CR**
In the
**COURT OF APPEALS**
For the
**FOURTEENTH DISTRICT**
At Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

3/23/2015 2:07:47 PM

CHRISTOPHER A. PRINE
Clerk

| | | |
|---|---|---|
| **PAUL WAYNE HARRIS** | § | **APPELLANT** |
| **V.** | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

**APPEAL FROM THE 268TH JUDICIAL DISTRICT COURT OF
FORT BEND COUNTY, TEXAS
TRIAL COURT NO. 11-DCR-057904**

**STATE'S BRIEF**

*Counsel for Appellee, The State of Texas*
**JOHN F. HEALEY**
DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS
301 Jackson Street, Richmond, Texas 77469
(Tel.) 281-341-4460/(Fax) 281-238-3340

**JASON BENNYHOFF**
ASSISTANT DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS
301 Jackson Street, Richmond, Texas 77469
(Tel.) 281-341-4460/(Fax) 281-238-3340/jason.bennyhoff@fortbendcountytx.gov

**ORAL ARGUMENT NOT REQUESTED UNLESS GRANTED TO
APPELLANT**

i

# IDENTIFICATION OF PARTIES

Pursuant to Tex. R. App. P. 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

**Appellant:**
**PAUL WAYNE HARRIS**

**Appellee:**
**THE STATE OF TEXAS**

**Counsel for Appellant:**
**JAMES STEVENS**
**(AT TRIAL)**

**DAVID DISHER**
**(ON APPEAL)**

**Address(es):**
**Stevens**
**P.O. Box 414**
**Richmond, Texas 77406**

**Disher**
**1167 FM 2144**
**Schulenberg, Texas 78956**

**Counsel for Appellee/State:**
**JOHN F. HEALEY, JR.**
**District Attorney of Fort Bend County, Texas**
**Fort Bend County District Attorney's Office**

**Address(es):**
**301 Jackson Street, Rm 101**
**Richmond, Texas 77469**

**IDENTIFICATION OF PARTIES** (cont.)

**JILL STOTTS AND ELIZABETH LIEB**
**Assistant District Attorneys, Ft. Bend County, Tx.**
**(AT TRIAL)**

**JASON BENNYHOFF**
**Assistant District Attorney, Ft. Bend County, Tx.**
**(ON APPEAL)**

**JOHN J. HARRITY, III**
**Assistant District Attorney, Ft. Bend County, Tx.**

**Trial Judge:**
**The Hon. Brady Elliott**
**268th Judicial District Court**
**Fort Bend County, Texas**

# TABLE OF CONTENTS

**SECTION**                                                                                         **PAGE**

IDENTIFICATION OF PARTIES ................................................................................. ii

TABLE OF CONTENTS .........................................................................................iv

INDEX OF AUTHORITIES.....................................................................................vi

STATEMENT REGARDING ORAL ARGUMENT............................................... vii

STATEMENT OF THE CASE..................................................................................1

POINTS OF ERROR PRESENTED BY APPELLANT ...........................................2

STATEMENT OF FACTS .......................................................................................2

SUMMARY OF THE ARGUMENT ......................................................................12

RESPONSE TO APPELLANT'S SOLE POINT OF ERROR

    APPELLANT HAS NOT PROVEN THAT HIS TRIAL COUNSEL WAS
    INEFFECTIVE, NOR THAT HE WAS PREJUDICED BY ANY SUCH
    ALLEGED INEFFECTIVENESS

     ...........................................................................................13

    Standard of Review...............................................................................13

    Argument and Authorities.....................................................................14

PRAYER    ...........................................................................................19

# INDEX OF AUTHORITIES

## Cases

*Chambers v. State*, 903 S.W.2d 21, 34 (Tex. Crim. App. 1995) ..............................15

*Howland v. State*, 966 S.W.2d 98, 104 (Tex. App.—Houston [1st Dist.] 1998) .....17

*Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. Ap. 1994) ................................15

*Levy v. State*, No. 01-13-00379-CR, 2014 WL 3408697 (Tex. App.—Houston [1st Dist.] Jul. 10, 2014, no pet. h.) ...........................................................................15

*Nejnaoui v. State*, 44 S.W.3d 111, 116 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ...................................................................................................................17

*Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) .............................17

*Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) ...............................13

*Shore v. State*, No. AP-75,049, 2007 WL 4375939 at *15-16 (Tex. Crim. App. Dec. 12, 2007) ........................................................................................................15

*Strickland v. Washington*, 466 U.S. 668 (1984) ......................................................14

*Thomas v. State*, 126 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ..............................................................................................................18

*Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) .............................18

*Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000) ....................................17

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex. R. App. P. 39, the State does not request oral argument unless granted to Appellant.

**No. 14-14-00514-CR**
In the
**COURT OF APPEALS**
For the
**FOURTEENTH DISTRICT**
At Houston

| | | |
|---|---|---|
| **PAUL WAYNE HARRIS** | § | **APPELLANT** |
| **V.** | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

**APPEAL FROM THE 268TH JUDICIAL DISTRICT COURT OF
FORT BEND COUNTY, TEXAS
TRIAL COURT NO. 11-DCR-057904**

**STATEMENT OF THE CASE**

Appellant was charged in cause number 11-DCR-057904 with the offense of Aggravated Assault with a Deadly Weapon alleged to have been committed on or about May 29, 2011. (1CR7). Appellant pled "not guilty" to this indictment and his case proceeded to a trial by jury. (3RR4). Following a contested trial, Appellant was found "guilty" by the jury of the offense of Aggravated Assault with a Deadly Weapon. (1CR35). The case then proceeded to a contested punishment trial before the jury, and the jury assessed Appellant's punishment at 18 years' confinement in the Texas Department of Criminal Justice – Institutional Division, and a fine of $8,000.00. (1CR64-67).

1

## POINT OF ERROR PRESENTED BY APPELLANT

I. "Trial counsel failed to provide effective assistance of counsel by failing to object to a continuing pattern of errors." App. Br. at p. 11.

## STATEMENT OF FACTS

Appellant was charged with the offense of Aggravated Assault with a Deadly Weapon. (1CR7). Following the State's opening statement, Appellant's trial counsel gave an opening statement in which he reminded the jurors that the State's opening statement was not evidence, and in which he outlined the defense's theory of the case. (3RR8). Appellant's trial counsel outlined the defense's theory of the case as being that the complainant, as a jilted lover, orchestrated a series of events to take revenge on Appellant by having him arrested and criminally charged. (3RR8-9).

The State's case began with the playing of the 911 call, which was admitted by agreement. (3RR9).

Officer Garcia of the Stafford Police Department then testified that he responded, along with another officer, to a call at the complainant's apartment. (3RR16-17). Garcia testified that the complainant, Tiffany Harris (Tiffany), said that Appellant threatened her with a square, silver handgun. (3RR27). Garcia testified that Appellant was not present at the scene when the police arrived.

2

(3RR18). Garcia did not know if Tiffany had sprayed Appellant with pepper spray, or "mace," but thought it was possible. (3RR34).

Appellant's trial counsel admitted two protective orders Tiffany had against Appellant as exhibits. (3RR36; 8RR at Ex. 1-2). Garcia testified that very early in his conversation with Tiffany, she told the officers about the protective order and showed them a copy. (3RR40). Garcia testified that Tiffany said she went out to her car before 5:00 in the morning because she had a "gut feeling" that Appellant was going to do something to the vehicle. (3RR33).

Officer Hargraves of the Stafford Police Department testified that he responded to a call at Tiffany's apartment along with Officer Garcia. (4RR6). Hargraves testified that he saw no major damage to Tiffany's vehicle. (4RR34).

Tiffany then testified that she invited Appellant to violate the protective order she took out against him on numerous occasions. (*See, e.g.*, 4RR66-67, 68-69). Tiffany asked Appellant to come hook up her dryer while she had a protective order against him, and he did so without assaulting or threatening her, and she did not call the police. (4RR66-67). Tiffany's son also allowed Appellant to enter their apartment while the protective order was in force, and Tiffany ultimately called the police regarding that incident only after going to work the next day. 4RR68-69). Tiffany testified that she further encouraged, or at least allowed numerous other violations of these protective orders, including going to parties

3

with Appellant, going to a couples' retreat with Appellant, and going to the Houston Livestock Show and Rodeo with Appellant. (4RR72-77).

Tiffany testified that she did not know if Appellant was ever aware that she had a protective order against him. (4RR71).

Tiffany conceded that although there was another witness to the incident at the sports bar on the night she was allegedly assaulted by Appellant, she did not tell anyone about that witness. (4RR86). Tiffany conceded that Appellant had never damaged her car before that night. (4RR89). Tiffany also testified that there was a witness who saw the damage to her vehicle on the night of the assault and she did not tell the police about that person. (4RR90).

Tiffany testified on cross examination that the Attorney General's Office paid for her to move from Appellant's house to another residence. (4RR105). Tiffany also testified that she applied for victim compensation funds. (4RR106).

The trial court then asked Appellant's counsel to clarify how this line of questioning was relevant to the case. (4RR107). Appellant's counsel stated that this line of questioning went to credibility. (4RR107). The trial court then allowed Appellant's trial counsel to continue questioning Tiffany along these lines. (4RR107).

Tiffany conceded that she ultimately received more money than she originally requested. (4RR108). The trial court then instructed Appellant's

counsel that such questions were not relevant, and Appellant's trial counsel stated that he would move on. (4RR109). The State's attorney then requested permission to ask questions to clarify Tiffany's motives on redirect, and the trial court stated it would allow one such question. (4RR109).

Appellant's trial counsel later approached the bench and requested a hearing outside the presence of the jury to ask Tiffany a question which might relate to Appellant giving her a sexually transmitted disease, or divulging that she had such a disease. (4RR112). The trial court stated that "the nature of that question in and of itself is not an improper question; but it leads to maybe opening an improper area." (4RR112). The trial court asked Appellant's trial counsel why this was relevant, and Appellant's trial counsel responded that "We think that's why she … made this up because she's so angry…." (4RR113). The trial court then allowed Appellant's trial counsel to voir dire Tiffany about this issue outside the presence of the jury. (4RR113).

Appellant's trial counsel then asked, during a voir dire outside the presence of the jury whether Appellant had ever betrayed Tiffany's trust to a relative. (5RR5). Tiffany denied that any such thing had occurred and the voir dire concluded. (5RR5).

There was then a bench conference where the State's attorney requested that she be allowed to introduce testimony from Tiffany that she was assaulted by

Appellant the preceding July. (5RR5-6). Appellant's trial counsel requested that the State be restricted to referencing anything beyond what was already conceded through the admission of the protective orders. (5RR6-7). The trial court ultimately ordered that the State could reference "family violence," as stated in the protective order, but not an assault. (5RR8).

After the jury returned, Tiffany admitted that she allowed her son to stay with Appellant while the protective order was in effect. (5RR9-10). Tiffany also conceded that on the night of this incident she drank four or five beers. (5RR43).

Detective Roman with the Stafford Police Department then testified. (5RR44). Roman testified that she first spoke with Appellant about this incident by phone. (5RR49). Roman testified Appellant was not in custody when she spoke with him. (5RR49). Roman left Appellant a message about this incident and Appellant called her back and gave a statement by phone. (5RR50-51, 57).

Appellant told Roman that he was present in the parking lot of Tiffany's apartment complex on the night of the incident, but denied threatening her, and denied having a gun. (5RR51). Appellant told Roman that Tiffany had "maced" him. (5RR57). Appellant's trial counsel pointed out an apparent discrepancy between what Tiffany said about the gun on the 911 call and how she described it at the scene and asked Roman if she had followed up on any such discrepancy, and she had not. (5RR61-62).

The State and defense then rested. (5RR62-63).

In closing argument, Appellant's trial counsel reiterated the defense's theory of the case, that Tiffany had orchestrated a series of events to have Appellant arrested because she was angry at him. (5RR75-95).

Appellant's counsel made numerous objections throughout the course of the trial, and the trial court granted those objections on numerous occasions, and also on several occasions the trial court ordered the State to rephrase questions following a defense objection. (*See, e.g.,* 3RR44, 45; 4RR15, 16, 17, 35-36; 5RR36, 50). The trial court also overruled the State's objections on several occasions. (*See, e.g.*, 4RR82; 5RR14, 59).

During deliberations, the jury sent out several questions. (1CR39-45). One of these questions stated that the jury was "not in agreement with a verdict of guilty or not guilty." (1CR41). Another note from the jury stated that the jury was deadlocked, 8-4. (1CR44).

The jury did ultimately render a verdict of guilty. (1CR35). The jury also returned a finding that Appellant used a deadly weapon during the commission of the offense. (1CR36).

The case then proceeded to a contested punishment hearing. (7RR7). Appellant's counsel gave an opening statement in which he pointed out that Appellant's actions, while sufficient to establish that he had committed the offense,

were not of the most serious variety in that no injury occurred to the victim. (5RR14-15).

The State's punishment evidence consisted primarily of Tiffany's testimony regarding Appellant's prior assault on her. (5RR20-26).

Appellant's trial counsel got Tiffany to concede that Appellant was on probation solely for the act of choking her and nothing else she said he did. (7RR31-32). Tiffany also admitted on cross examination that she was not always entirely truthful with Appellant during their marriage. (7RR33).

Tiffany testified on cross examination that she told Appellant on their first date that she had a communicable disease, namely herpes. (7RR33). Tiffany testified that Appellant never beat her about that. (7RR34). Tiffany testified that she had a sexual relationship, and not always in a protected manner, with Appellant while she had this disease. (7RR34).

Appellant's trial counsel asked Tiffany if she intended to have sex with Appellant on their first date and this question was objected to, and the objection sustained. (7RR35). Appellant's trial counsel nonetheless asked several other questions regarding the herpes issue. (7RR35-36). Tiffany testified that Appellant had called her mother and told her that Tiffany had herpes. (7RR36-37). This line of questioning continued until the court said, "Let's get off this subject. Let's move on." (7RR39).

Tiffany then conceded on cross examination that she had opened a bank account with another man prior to meeting Appellant, and that bank account had stayed open during their marriage. (7RR42). Tiffany testified that Appellant found out about this bank account on Mother's Day, and assaulted and raped her as a result. (7RR44). Tiffany testified that she did not call the police in regard to this incident. (7RR44).

On redirect, Tiffany testified that Appellant assaulted her on three or four occasions. (7RR46). Tiffany testified that she only called the police on one of those occasions. (7RR46). Tiffany testified that Appellant sexually assaulted her 8-10 times, but she never called the police about any of these incidents. (7RR46). During redirect examination, the court at one point interrupted Tiffany to instruct her not to speculate on Appellant's motives despite Appellant's counsel not having objected. (7RR48).

On redirect, Tiffany was asked if she was fabricating these allegations to get back at Appellant. (7RR49). Tiffany denied this. (7RR49). Appellant's trial counsel questioned Tiffany regarding her motives and her actions leading up to the filing of these charges at length. (7RR49-58). Tiffany conceded that the only evidence of any of the extraneous offenses she alleged was her own testimony. (7RR56).

9

The State then reintroduced its evidence from the guilt/innocence phase and rested. (7RR59).

Appellant then took the stand in the defense's case in chief. (7RR60). Appellant then was asked at length about his prior alleged assaults on Tiffany and he denied having committed those offenses. (7RR60-71). During this questioning, the trial court told Appellant's counsel not to go through each of the pictures already admitted and describe them, but to move on with his questioning. (7RR61). Appellant's trial counsel then did continue to question Appellant about the extraneous offenses at length, but without describing each photograph individually. (7RR61-71).

Appellant denied ever owning a silver handgun. (7RR69). Appellant testified that the only gun he owned was dark in color, and he sold it when he went on probation because he was not allowed to possess the weapon as a condition of his probation. (7RR69-70).

Appellant then testified that he was doing well on his probation, despite some minor lapses. (7RR71-77). Appellant testified that he was only told about one protective order by Tiffany, which was a temporary order, and he was never aware of any other orders. (7RR77-81). Appellant then detailed how he was encouraged to unknowingly violate those protective orders by Tiffany. (7RR80-83).

The trial court then ordered Appellant's trial counsel not to retry the guilt/innocence phase and move on with his questioning. (7RR83-84). Appellant's trial counsel then questioned Appellant about Tiffany's rape allegations, which he denied, and Appellant's prior convictions. (7RR84-85). Appellant then testified regarding his family connections and his employment. (7RR91-95).

Appellant testified that Tiffany was not initially forthcoming regarding having herpes, but he loved her and stayed with her despite that. (7RR97-99). Appellant denied assaulting or raping Tiffany in regard to this. (7RR98-99).

Appellant then testified regarding the underlying offense, and the State objected that this testimony was relevant to guilt/innocence rather than punishment. (7RR100). The trial court sustained the objection and ordered Appellant's counsel to ask no more than two further questions in regard to this. (7RR101-02). Appellant was nonetheless able to answer numerous questions in regard to the underlying offense. (7RR99-102).

Appellant's trial counsel then asked Appellant, on redirect examination, about what he was put on probation for in 1998, and the trial court told Appellant's counsel not to "replow the same ground." (7RR126). Appellant's trial counsel then questioned Appellant about the conditions of the probation for that offense and the underlying facts of that offense. (7RR126-28).

The defense and State then rested. (7RR128).

Appellant's trial counsel then gave a closing statement in which he reminded the jurors that Appellant's conduct should be viewed as a lesser offense on the spectrum of aggravated assault offenses. (7RR135-136). Appellant's trial counsel then requested that the jurors consider a punishment at the low end of the punishment range. (7RR142). Appellant's trial counsel also reminded the jurors that they would have to believe that any extraneous offenses occurred beyond a reasonable doubt before considering them. (7RR145).

Following deliberations, the jury then assessed Appellant's punishment at 18 years' confinement in the Texas Department of Criminal Justice – Institutional Division, and a fine of $8,000. (7RR152).

No motion for new trial was filed, nor was there any hearing on such a motion.

## SUMMARY OF THE ARGUMENT

Appellant alleges that trial counsel should have objected at various points during the trial, but presents no record upon which this Court can meaningfully review trial counsel's trial strategy. Appellant also fails to acknowledge that trial counsel had a clear trial strategy, namely to argue that the complainant fabricated the allegations to get back at Appellant, and that trial counsel effectively executed that strategy throughout the trial. Appellant therefore fails to prove that his trial counsel was ineffective.

12

Appellant also makes only a general allegation of prejudice with no citation to supporting record or case law. Appellant has therefore inadequately briefed this portion of his argument and therefore waived it. Even presuming the merits should be considered, Appellant presents no record on which trial counsel's actions can be examined in light of whether a trial strategy was at work, nor any record on which it can be determined how Appellant was prejudiced. Appellant has therefore failed to prove prejudice.

**Response to Appellant's Sole Point of Error**

**<u>APPELLANT HAS NOT PROVEN THAT HIS TRIAL COUNSEL WAS INEFFECTIVE, NOR THAT HE WAS PREJUDICED BY ANY SUCH ALLEGED INEFFECTIVENESS</u>**

**Standard of Review**

"Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). "A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim." *Id*. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Id*. (internal quotations omitted). "To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must

affirmatively demonstrate the alleged ineffectiveness." *Id*. (internal quotations omitted).

## Argument and Authorities

*Ineffectiveness*

Appellant complains that his trial counsel was ineffective for "failing to object to a continuing pattern of errors." App. Br. at p. 11. Appellant then details a series of exchanges during the trial wherein he asserts that his trial counsel should have objected, and complains that his trial counsel was ineffective by virtue of his having failed to object. (App. Br. at pp. 36-43). Appellant also complains of one portion of the State's closing punishment argument where he argues his trial counsel was ineffective for not objecting to the prosecutor's argument. (App. Br. at p. 44).

To establish that his trial counsel was ineffective, Appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that but for counsel's ineffectiveness, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984).

Where there are only broad claims of ineffectiveness without support in the record, the appellant has not proven his claim of ineffectiveness by a preponderance of the evidence. *Chambers v. State*, 903 S.W.2d 21, 34 (Tex. Crim.

14

App. 1995) ("We do not know on the bases if the record exactly why counsel chose not to question [the venireman]. Therefore, we cannot say that appellant has overcome the presumption that counsel's failure to do so did not fall within the wide range of reasonable professional assistance"); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (holding that where the record contains no evidence to overcome the presumption of effective assistance, the reviewing court will not reverse); *Levy v. State*, No. 01-13-00379-CR, 2014 WL 3408697 (Tex. App.—Houston [1st Dist.] Jul. 10, 2014, no pet. h.) (not designated for publication); *see Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002); *see also Shore v. State*, No. AP-75,049, 2007 WL 4375939 at *15-16 (Tex. Crim. App. Dec. 12, 2007) (not designated for publication).

There is nothing in the record that clearly establishes ineffectiveness in Appellant's trial counsel's representation. There was no motion for new trial, nor any hearing on such a motion, and therefore there is nothing in the record regarding Appellant's trial counsel's trial strategy.

Appellant complains primarily of portions of the record where objections were sustained regarding trial counsel's questioning, or where the trial judge ordered Appellant's trial counsel to move along. (App. Br. at pp. 36-43). However, Appellant's argument ignores that in each of these scenarios, Appellant's trial counsel was able to ask detailed questions and to question the witness at

length regarding the issue that the objection or trial judge's comment was in regard to. In each case, Appellant's trial counsel was able to elicit the information he appeared to be after, and was able to construct a coherent defense based on a clear theory of the case – namely that the complainant had fabricated the allegations in this case out of anger toward Appellant. In fact, Appellant's counsel persisted in asking questions along lines which it appeared the trial court was losing patience on numerous occasions.

Further, Appellant's counsel's questions, especially when viewed in light of his opening and closing arguments, seem reflective of a trial counsel who chose a strategy of the case and then pursued that strategy throughout the course of the trial in a coherent manner. That strategy being, to play up the lack of physical evidence and try to establish a pattern of behavior on the part of the complainant to indicate that she was fabricating the allegations out of anger at Appellant.

Appellant's complaints in this regard are therefore not reflective of the trial record as it exists, and without any record as to the reasoning behind Appellant's trial counsel's actions, Appellant cannot be said to have carried his burden to prove that his trial counsel was ineffective.

*Prejudice*

Appellant also makes only a generalized claim of prejudice, with no citations to the record nor supporting case law. App. Br. at pp. 45-46. Appellant's

point of error with regard to the prejudice prong is inadequately briefed and this issue should therefore be considered waived. Even if the merits of the issue are addressed, Appellant has made no effort to prove prejudice and therefore his claim under *Strickland* should fail even presuming that Appellant has shown ineffectiveness.

This Court has held that it is incumbent upon Appellant to cite specific legal authority and to provide legal argument based upon that authority. *Nejnaoui v. State*, 44 S.W.3d 111, 116 (Tex. App.—Houston [14th Dist.] 2001, no pet.); s*ee also* Tex. R. App. P. 38.1(h); *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996). Appellant has failed to ground his contentions in relevant, analogous case law to give this Court a jurisprudential framework for evaluation of his claims, thus leaving this Court with nothing to review. *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000). Appellant's claim of prejudice should be considered waived as inadequately briefed. Should this Court choose to consider the merits of Appellant's claim of prejudice, it should still overrule this point of error because Appellant has made no effort to show prejudice.

Appellant must prove by a preponderance of the evidence not only that his trial counsel was ineffective, but that his trial counsel's ineffectiveness prejudiced Appellant. *Howland v. State*, 966 S.W.2d 98, 104 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999). The reviewing court must

not speculate beyond the record provided. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Here, Appellant has provided no record whatsoever on which this Court could make a determination as to trial counsel's strategy, nor on whether Appellant's trial counsel's actions were in keeping with a sound trial strategy. Therefore, Appellant has failed to carry his burden to establish that trial counsel acted without a valid strategic reason. *Thomas v. State*, 126 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Appellant has therefore failed to prove prejudice from any alleged ineffectiveness and his sole point of error should be overruled.

Appellant's point of error should be overruled and his conviction affirmed in all things.

## **PRAYER**

Wherefore, premises considered, Appellee prays that Appellant's point of error be overruled and his conviction and sentence be affirmed in all things.

Respectfully submitted,

**John F. Healey, Jr.**


 /s/ Jason Bennyhoff
**Jason Bennyhoff**
Assistant District Attorney
Fort Bend County, Texas
S.B.O.T. No. 24050277
301 Jackson Street Room 101
Richmond, Texas 77469
281-341-4460 (office)
281-341-8638 (fax)

**CERTIFICATE OF SERVICE**

I, Jason Bennyhoff, do hereby certify that a true and correct copy of the foregoing Brief was sent to counsel for the Appellant on March 23, 2015, via email by way of electronic service through EFile Texas at the email address below.

David Disher
disherdave@aol.com
Counsel for Appellant

/s/ Jason Bennyhoff
Jason Bennyhoff

**Certificate of Compliance with Texas Rule of Appellate Procedure 9.4(i)(3)**
In accordance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Jason Bennyhoff, hereby certify that the foregoing electronically created document has been reviewed by the word count function of the creating computer program, and has been found to be in compliance with the requisite word count requirement in that the entire document is 4,493 words.

/s/Jason Bennyhoff

Jason Bennyhoff