

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JAN ABRAHAM NEL, | § | No. 08-17-00075-CR |
| Appellant, | § | Appeal from the |
| v. | § | 210th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20160D02824) |
| | § | |

**O P I N I O N**

A jury convicted Jan Abraham Nel of theft of property valued at more than $20,000 but less than $100,000. On appeal, he argues that the trial court erred by failing to instruct the jury on the definition of "intent," as it pertained to the charged offense, and, as a result, he was egregiously harmed and denied a fair and impartial trial. We affirm.

**BACKGROUND**

At trial, David Gonzalez, a sales professional at the Viva Chevrolet Dealership (the Dealership) in El Paso, Texas, testified to the following events. On February 2, 2015, Gonzalez met with Nel after he came into the Dealership claiming he wanted to purchase a vehicle. After Nel selected a 2015 Chevrolet Heavy Duty 2500 Duramax pickup truck, they reached an agreement that Nel would pay a total purchase price of $51,376.94 for the truck. Nel informed Gonzalez

that he would pay for the truck via an electronic funds transfer originating from the Department of the Treasury. After conferring with a manager, Gonzalez asked Nel to provide copies of documents related to the funds he had claimed he would be transferring for his purchase. After Nel informed him that he did not have documents with him at the time, Gonzalez's manager told him to use a borrower's agreement in the interim. The next day, the Dealership and Nel entered into a borrowed vehicle agreement allowing him to take possession of the truck, without any payment, from February 2, 2015, to February 20, 2015. On the form reflecting the agreement, Nel signed his name and provided his auto insurance policy number, street address, and phone number. Gonzalez then provided Nel with keys to the truck and a temporary license plate.

About one month after Nel took possession of the truck, Gonzalez learned that funds had not yet been received and he began calling and sending Nel text messages. When Gonzalez asked Nel when he was going to pay for the truck, Nel responded that he was "working on it" and would get back to him soon. At one point during this period, Nel provided the Dealership with a "Bill of Exchange" and a "Texas UCC Initial Filing Acknowledg[e]ment," which he represented were documents that purportedly established the existence of the funds he held in a Treasury account that he had requested be transferred to the Dealership.

On June 12, 2015, as the Dealership continued waiting for funds to arrive, Gonzalez texted Nel again. Nel responded that he expected funds to be transferred to his bank account "any day[,]" and that he would let Gonzalez know when that happened. Later, when funds had failed to arrive, Gonzalez went to the address Nel had listed on the borrower's agreement. Once there, Gonzalez discovered the residence at the address Nel had given was vacant and he described that he saw "just carpet and wall" when he looked inside. Gonzalez further testified that neither Nel nor the

2

truck were located at the residence and it appeared unoccupied.

On a later date, Gonzalez was driving in the same area with his finance manager riding with him, when he happened to recognize the truck parked outside another residence. Gonzalez verified the vehicle identification number (VIN) on the plate matched with his paperwork. When Gonzalez and his manager knocked on the door of the house, Nel answered and told them that he was "still trying to resolve it" and that he would return to the Dealership that afternoon to complete the transaction. Gonzalez testified that Nel never returned to the dealership after this conversation.

Robert Herrera, the sales manager for the Dealership, also testified at trial about his attempts to receive payment for the truck. Herrera testified that he reviewed the paperwork Nel had provided to show how he planned on funding his purchase of the truck. Herrera described the paperwork showed that Nel had requested that the Internal Revenue Service (IRS) transfer to the Dealership funds in the amount of the purchase price. On August 14, 2015, Herrera sent a demand letter to Nel informing him that funds had not yet been received. The letter further stated that the vehicle would be reported stolen if Nel did not return the truck to the Dealership that same day. Nel responded to Herrera's letter solely with a form titled, "Notice and Demand to Validate Debt Claim." On August 27, 2015, Herrera sent a second demand letter to Nel, but the envelope was retuned, stamped as, "return to sender, vacant, unable to forward." At that point, Herrera decided to file a police report. Herrera later learned that Nel had already sold the truck to another dealership.

Officer Roberto Salido of the El Paso Police Department's Auto Theft Task Force also testified at trial that he was assigned to investigate the case after Herrera filed his report. Officer

Salido testified that he contacted Nel after reviewing the documents associated with the transaction. Nel claimed the entire affair was a "misunderstanding," and he would resolve it by speaking to the Dealership and the IRS. Officer Salido then decided to check a national database against the truck's vehicle identification number. In response, the database showed a "hit" from which Officer Salido learned that the truck had been sold to an El Paso dealership named Macova Motors.[1] Officer Salido further testified that his investigation revealed that the purported IRS documents given by Nel were "fake" and Nel was not willing to pay for the truck.

Agent Brandon Speed of the Texas Department of Public Safety also became involved in the investigation and later testified at trial. Agent Speed opined that Nel had executed a "redemption fraud scheme," which he described as "the use of a fraudulent treasury direct account that is utilized to fraudulently make purchases such as for a house [or] a vehicle, [or] to offset debts or other obligations where one would use money or bank accounts to do so." Agent Speed further testified the purported "Bill of Exchange" which Nel provided to the Dealership was a fraudulent document. Agent Speed based his opinion on several misspellings in the document and the fact that the "treasury direct account" it mentioned was "a fraudulent account that [was] purported to be an actual account that [bore] money." Also, the document included a misspelling of the name of the Treasury Secretary as "Jacob J. Lee."[2] Agent Speed likewise stated that other documents Nel used to complete the transaction also appeared to be fraudulent. Based on his investigation, Agent Speed testified that documents provided by Nel were "fabricated with the intent to commit

---

[1] Officer Salido further testified that title to the truck was later awarded to Macova Motors in a right of possession hearing.

[2] According to Agent Speed's testimony, the documents contained the name "Jacob J. Lee," but the correct spelling of the Secretary's name at the time of the offense in 2015 was "Jacob Lew."

a crime to fraudulently establish credit and make fraudulent purchases. In this case, it was the truck from [the Dealership]." On cross-examination, Agent Speed agreed with defense counsel that one reason that individuals create these types of documents is "because of a criminal intent to steal something or other," and he had concluded that "Mr. Nel did steal a truck."

*Procedural Background*

By indictment, the State charged Nel with one count of theft of property valued at over $20,000 but less than $100,000, and one count of false statement to obtain property or credit valued at over $20,000 but less than $100,000. At trial, the State presented testimony and documents as outlined above which included the purported "Bill of Exchange" that Nel provided to the Dealership and the Dealership's later attempts to receive full payment for the truck. Following Agent Speed's testimony, both the State and defense rested without Nel testifying in the guilt-innocence phase of the trial.

The trial court submitted a jury charge that defined theft as committed where a "person unlawfully appropriates property with the intent to deprive the owner of the property." The charge also stated that appropriation was unlawful if it was carried out without the owner's "effective consent," and it contained a statutory definition for that term. The charge's application paragraph also required the jury to find beyond a reasonable doubt that Nel unlawfully appropriated the truck from the Dealership without its effective consent "and with intent to deprive the [Dealership] of the property[.]" The charge did not, however, include a statutory definition of "intent" as it pertained to the offense of theft. Nel did not object to the omission of the statutory definition of "intent" in the charge.

The jury found Nel guilty of theft as charged in the indictment. During the punishment

5

phase, Nel gave testimony in support of his request for a probated sentence. While testifying, Nel agreed with both the prosecutor and his own counsel that he formed the intent to acquire the truck without paying for it and accepted responsibility for committing the offense. The jury assessed Nel's punishment as two years' incarceration and a $10,000 fine. This appeal follows.

## I.

## DISCUSSION

On appeal, Nel challenges his conviction in two issues, arguing that (1) the trial court erred by failing to instruct the jury on the statutory definition of "intent" as it pertains to the offense of theft, and (2) that Nel suffered egregious harm as a result of the trial court's omission, requiring reversal of his conviction and a new trial. We discuss each issue in turn.

### Error

In his first issue, Nel argues that the trial court erred by failing to include in the jury charge the statutory definition of "intent" as it pertains to the offense. By not contesting Nel's argument, the State appears to concede that the charge contained error. On review, we agree.

While other relevant terms were defined in the charge, and the charge correctly stated that a person commits theft when it is his or her "intent to deprive the owner of the property[,]" the statutory definition of "intent," as it pertains to the charged offense of theft, was not included in the charge itself. *See* TEX. PENAL CODE ANN. § 31.03(a) ("[a] person commits [theft] if he unlawfully appropriates property with intent to deprive the owner of property.").

A jury charge should distinctly set forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. Since "intent" is a statutorily defined element of the charged offense of theft, we hold that the trial court erred by failing to include the statutory definition of "intent" in

6

the charge. *See id.*; TEX. PENAL CODE ANN. § 31.03(a); TEX. PENAL CODE ANN. § 6.03(a) ("[a] person acts . . . with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result"); *see also Villarreal v. State,* 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (a trial court is obliged to communicate to the jury each statutory definition that affects the meaning of an element of the offense); *Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986) (a statutorily defined word must be included in the charge as a part of the law applicable to the case); *Lovings v. State*, 376 S.W.3d 328, 337 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Miramontes v. State*, 225 S.W.3d 132, 145 (Tex. App.—El Paso 2005, no pet.).

## Egregious Harm

Having concluded that the trial court erred by failing to include a statutory definition of "intent" as it pertains to theft in the jury charge, we now consider whether Nel suffered harm sufficient to warrant reversal of his conviction and a new trial. Where, as here, the defendant did not object to the omission of a statutorily defined term from the jury charge, we will reverse a conviction only if the defendant suffered "egregious harm" as a result of the omission. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). In examining the record for egregious harm, we consider the following factors: (1) the entire jury charge; (2) the state of the evidence; (3) the closing arguments of the parties; and (4) any other relevant information in the record. *Id*. (citing *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006)); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), *superseded on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988)). Jury charge error is egregiously harmful if it affects the

7

very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Arteaga*, 521 S.W.3d at 338 (citing *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006)). An egregious harm determination must be based on a finding of actual, rather than theoretical, harm. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005).

We first consider the entirety of the jury charge. *Arteaga*, 521 S.W.3d at 338. When a statutory definition is not included in the charge, it is assumed the jury would use the term's commonly understood meaning in its deliberations. *Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983); *Lovings*, 376 S.W.3d at 338. The relevant statutory definition of "intent" is such that "[a] person acts . . . with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). The dictionary defines "intent" as "the act or fact of intending, [especially] the design or purpose to commit a wrongful or criminal act," and alternatively defines the word as "having the mind, attention, or will concentrated on something or some end or purpose." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 651 (11th ed. 2014). Thus, the statutory definition of the mental state "intent" or "intentionally" as it relates to the actor's action with respect to the nature of his conduct or the existing circumstances is not substantially different from the common usage and understanding of those terms.

Here, the State was required to prove that Nel intentionally deprived the Dealership of its property in an unlawful manner, and the jury charge's application paragraph required the State to prove "beyond a reasonable doubt that . . . Nel, did then and there unlawfully appropriate, . . . a Chevrolet motor vehicle . . . from . . . [the Dealership], the owner thereof, without the effective consent of the owner, and with intent to deprive the owner of the property[.]" As such, although

8

the charge did not include the statutory definition of "intent" or "intentionally," we find the omission weighs against a finding of egregious harm because the jury was properly instructed to only find Nel guilty of the offense if it found beyond a reasonable doubt that Nel acted with intent to unlawfully deprive the Dealership of the truck, and because the statutory definition of "intent" is not significantly different from the commonly understood meaning of that term. *See Nejnaoui v. State*, 44 S.W.3d 111, 120–21 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (egregious harm not shown where the jury charge omitted the statutory definition of "conduct" because the charge provided the statutory elements of the charged offense in the abstract portion of the charge and the application paragraph applied the facts of the case to the law of the charged offense); *Mathis v. State*, 858 S.W.2d 621, 622–23 (Tex. App.—Fort Worth 1993, pet. ref'd) (in a case where defendant was charged with forgery, defendant did not suffer egregious harm from the omission of the statutory definition of "knowingly" or "with knowledge" from the jury charge because the charge required the State to prove that defendant acted knowingly beyond a reasonable doubt, and because the statutory definition of "knowingly" was not significantly different from the commonly understood meaning of that term).

Next, we consider the state of the evidence. *Arteaga*, 521 S.W.3d at 338. Here, the evidence presented at trial tended to support Nel's intent to unlawfully deprive the Dealership of the truck. The State established that Nel gave the Dealership a document that purported to signify the existence of a "treasury direct account," which Agent Speed testified was "a fraudulent account that [was] purported to be an actual account that [bore] money." Agent Speed also testified that, in his opinion, the documents Nel gave the Dealership were "fabricated with the intent to commit a crime to fraudulently establish credit and make fraudulent purchases. In this case, it was the

9

truck from [the Dealership]." The State also established that Nel gave a false address to a vacant house when filling out the paperwork associated with the transaction, further suggesting that it was his intent to unlawfully appropriate the truck by inducing the Dealership to enter into the transaction through his deceptive acts. Likewise, the State presented evidence of a series of exchanges between Nel, Dealership employees, and Officer Salido, all of which suggested that Nel was attempting to avoid paying for the truck thereby supporting the intent element of the offense. Finally, the evidence showed that Nel sold the truck to another dealership, further suggesting that he intentionally appropriated it in an unlawful manner. As such, the evidence tending to establish Nel's guilt was strong, and this factor weighs against an egregious harm determination as well. *See Olivas*, 202 S.W.3d at 148 (where evidence is sufficient to establish guilt beyond a reasonable doubt, the state-of-the-evidence factor weighs against a finding of egregious harm).

Third, we consider the arguments of the parties. *Arteaga*, 521 S.W.3d at 338. During voir dire, Nel's trial counsel gave the following example related to intent as it pertains to theft:

> Now, I come over and I knock on the door and say, give me $500 and my niece is going to come back and bring you a diamond for the $500 in a couple of hours. So you give me the 500 bucks and my niece doesn't ever show up. That can be a criminal case.

Given that this was a correct statement of law, this statement tends to reduce the likelihood that Nel was egregiously harmed by the jury charge error. Likewise, during closing arguments the State argued that "[f]rom the moment that Mr. Nel signed that contract, he never had the intent to pay for that vehicle." As such, this factor weighs against a finding of egregious harm as well. *See Olivas*, 202 S.W.3d at 148 (egregious harm was not shown where, *inter alia*, counsel's arguments amounted to a correct statement of the law on the pertinent issue).

10

Finally, we consider any other relevant information in the record. *Arteaga*, 521 S.W.3d at 338. During the punishment phase of trial, Nel agreed with defense counsel that the transaction was a "scam" and that it was "[his] intent to get a truck without paying for it" and that he was "admitting that in front of the jury because that was the evidence[.]" Nel ultimately admitted that he committed the charged offense. Since Nel did not present any evidence during the guilt-innocence phase of trial and later admitted to the commission of the offense during the punishment phase, we cannot see how the omission of the statutory definition of "intent" vitally affected a defensive theory or the very basis of the case, or deprived Nel of a valuable right. As such, this factor weighs against a finding of egregious harm as well. *See Arteaga*, 521 S.W.3d at 338; *see also Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008) (where a defensive theory is not plausible in light of the evidence, such weighs against a finding of egregious harm).

Based on the foregoing, we hold that Nel has not shown that the trial court's error in omitting the definition of "intent" in this instance was so egregiously harmful that he did not receive a fair and impartial trial. As such, we conclude that reversal of Nel's conviction and a new trial are not warranted. *See Allen*, 253 S.W.3d at 267; *see also Olivas*, 202 S.W.3d at 148; *Nejnaoui*, 44 S.W.3d at 120–21; *Mathis*, 858 S.W.2d at 622–23; *Schwalbach v. State*, Nos. 02-14-00216-CR, 02-14-00217-CR, 2015 WL 601746, at *4–6 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op., not designated for publication); *Palomo v. State*, No. 11-15-00119-CR, 2017 WL 3089847, at *5–6 (Tex. App.—Eastland July 20, 2017, pet. ref'd) (mem. op., not designated for publication). Nel's first and second issues are overruled.

## II.

Finally, in response to our order dated June 22, 2017, the trial court certified Nel's right to

11

appeal in this case, but we note here that the certification does not bear Nel's signature indicating that he was informed of his right to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). Accordingly, we conclude that the certification is defective, and has not been corrected by Nel's attorney or the trial court. To remedy this defect, this Court hereby ORDERS Nel's attorney, pursuant to TEX. R. APP. P. 48.4, to send Nel a copy of this opinion and this Court's judgment, to notify him of his right to file a pro se petition for discretionary review, and to inform him of applicable deadlines. *See* TEX. R. APP. P. 48.4, 68. Said attorney representing Nel is further ORDERED to comply with all requirements of TEX. R. APP. P. 48.4.

## CONCLUSION

Having overruled all issues presented, we affirm the judgment of the trial court.


GINA M. PALAFOX, Justice

January 18, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

12