**Affirmed and Opinion filed February 24, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00038-CR

## AMIR ALI SHARIF, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 18-CR-3283**

## OPINION

Appellant Amir Ali Sharif appeals from his conviction for the felony offense of being a felon in possession of a firearm. *See* Tex. Penal Code § 46.04(a)(2) (prohibiting felon from possessing firearm "at any location other than the premises at which the person lives."). Concluding the evidence is legally sufficient to support appellant's conviction and that the trial court did not reversibly err when it defined "premises" in the jury charge as "a building or a portion of a building," we overrule appellant's issues and affirm the trial court's judgment.

## BACKGROUND

Sergeant Bradley Macik of the Texas City Police Department saw a vehicle drive through a stop sign on Westward Avenue without stopping. Sergeant Macik pulled the vehicle over and determined that appellant was the driver and only occupant of the vehicle. Sergeant Macik asked appellant if he had any weapons in the vehicle. Appellant told Sergeant Macik that he did not.

Next, Sergeant Macik asked appellant for his driver's license and proof of insurance. While appellant searched for the requested documents, Sergeant Macik asked appellant where he was going and where he was coming from. Appellant answered that he was driving to his mother's apartment in Texas City. Appellant handed Sergeant Macik his paperwork. Sergeant Macik returned to his patrol car to verify appellant's information. During appellant's trial, Sergeant Macik testified that he noticed appellant was driving in the opposite direction from his stated destination and he found that to be odd.

Sergeant Macik returned to appellant's vehicle and asked if appellant would consent to a search of his vehicle. According to Sergeant Macik, appellant consented. During the ensuing search, Sergeant Macik found a loaded handgun underneath the driver's seat. During his trial testimony, appellant admitted that he had possession of the handgun and that it was his. Appellant also admitted he was aware that, as a convicted felon, he was not allowed to have a firearm in his vehicle, only in his house. Sergeant Macik completed the search of appellant's vehicle and found some stereo equipment, "a couple of pieces of random clothing," and car-cleaning supplies. Sergeant Macik continued that, other than the handgun, the items he found were items you would normally find in a person's car. Based on his experience, Sergeant Macik testified during cross-examination that there was no evidence found in the vehicle indicating appellant was living in his vehicle.

2

In addition, Sergeant Macik testified appellant never told him that he was living in the vehicle.

Appellant testified during his trial that he was driving from his girlfriend's house where he had washed some of his clothes. According to appellant, he was taking the clothes back to his mother's residence, where he was living at the time. Appellant further testified that his mother's address on 13th Avenue in Texas City was the address (1) listed on his driver's license, (2) where his vehicle was registered, (3) where he has packages delivered, and (4) the address he gave when he was booked into jail on the charge at issue in this appeal. Appellant also testified that he would occasionally sleep at other locations, including his girlfriend's residence and in his car at his place of employment, but he never testified that he was homeless, nor that he was living in his vehicle. Finally, during his trial testimony, appellant admitted to his prior felony conviction and that he was released from that conviction more than 5 years before his trial.

The case was submitted to the jury in a charge that instructed the jury that "premises" "means a building or a portion of a building." Appellant objected to the definition. Appellant argued the specific statute he was charged under did not define "premises" and the trial court should therefore leave the term undefined and rely on Section 311.011 of the Texas Code Construction Act which provides that "words and phrases shall be read in context and construed according to the rules of grammar and common usage." The trial court overruled appellant's objection. The jury subsequently found appellant guilty as charged in the indictment. It then assessed his punishment at three years in prison. This appeal followed.

## ANALYSIS

Appellant raises two issues in this appeal. In his first issue, appellant argues that the evidence is insufficient to support his conviction. Appellant argues in his

second issue that the trial court reversibly erred when it defined "premises" as "a building or a portion of a building." We address these issues in order.

## I.      Sufficiency of the evidence

In his sufficiency challenge appellant argues there is a fatal variance between the indictment and the evidence the State presented during the trial. Appellant asserts the evidence is legally insufficient because, in his view, the indictment alleged that he lived at N. Westward Ave. and there was no evidence in the record proving beyond a reasonable doubt that he lived at that location. Appellant asserts this means the State failed to prove that he possessed a firearm at a location other than the premises where he lived.

### A.      Standard of review and applicable law

Section 46.04 provides that

A person who has been convicted of a felony commits an offense if he possesses a firearm:

(1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or

(2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.

Tex. Penal Code § 46.04.

In reviewing the sufficiency of the evidence to support a conviction, we must consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1973); *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012). In our review, we consider all of the evidence in the record, whether admissible or

4

inadmissible.  *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013)).  We measure the sufficiency of the evidence supporting a conviction by comparing the evidence presented during the trial to the elements of the offense as defined in a hypothetically-correct jury charge, as modified by the charging instrument.  *Edward v. State*, 635 S.W.3d 649, 656 (Tex. Crim. App. 2021).  A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.  *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018).

"The sufficiency of an indictment is a question of law that is reviewed de novo."  *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009).  An indictment is sufficient if it charges the commission of an offense "in ordinary and concise language of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged."[1]  Tex. Code Crim. Proc. art. 21.11.  Generally, an indictment is legally sufficient if it tracks the language of the statute in question.  *State v. Moff*, 154 S.W.3d 599, 602 (Tex. Crim. App. 2004).  "A written instrument is an indictment . . . under the constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to

[1] If appellant was confused about what he was being charged with, he should have objected to the allegedly defective indictment before his trial started.  *See* Tex. Code Crim. Proc. art.  1.14(b) ("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.  Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code."); *Teal v. State*, 230 S.W3d 172, 182 (Tex. Crim. App. 2007).

prosecute, even if the instrument is otherwise defective." *Teal*, 230 S.W.3d at 181.

A variance occurs when there is discrepancy between the allegations in the indictment and the proof offered at trial. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). There are two types of variances in a legal sufficiency analysis: material and immaterial variances. *Thomas v. State*, 444 S.W.3d 4, 9 (Tex. Crim. App. 2014). Only a material variance, one that prejudices a defendant's substantial rights, will render the evidence insufficient. *Ramjattansingh*, 548 S.W.3d at 547. A material variance happens when the indictment, as written, (1) fails to adequately inform the defendant of the charge against him, or (2) subjects the defendant to the risk of being prosecuted later for the same crime. *Id.* In summary, a reviewing court tolerates variances as long as they are not so great that the proof at trial shows an entirely different offense than what was alleged in the charging instrument. *Id.* The burden of demonstrating a material variance rests with the defendant. *Rogers v. State*, 200 S.W.3d 233, 237 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

In viewing the evidence in the light most favorable to the verdict, we must "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 319). In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence but only ensure that the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Direct and circumstantial evidence are treated equally. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury may reasonably infer facts from the evidence as it sees fit. *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

When the record supports conflicting inferences, we presume the trier of fact resolved the conflicts in favor of the verdict and defer to that determination. *Clayton*, 235 S.W.3d at 778.

**B.    The evidence is legally sufficient to support appellant's conviction.**

We begin by examining the language of the indictment in this case. The State alleged that appellant "intentionally or knowingly possess[ed] a firearm after the fifth anniversary of [appellant's] release from confinement following conviction of said felony at a location other than the premises at which [appellant] lived, to wit: N. Westward Ave., Texas City, Texas." The jury charge tracked the indictment's language.

Appellant asserts that the evidence is insufficient because, in his view, the indictment alleged that he lived at "N. Westward Ave., Texas City, Texas" and there is no evidence in the record proving that allegation. Appellant made that argument at trial. We disagree with appellant's understanding of what the State alleged in the indictment. Rather than alleging where appellant lived, we conclude the indictment instead alleged that N. Westward Avenue "was the location other than the premises at which [appellant] lived." In other words, the language described the place in Galveston County where the traffic stop occurred and where appellant was found in possession of a firearm while he was driving his vehicle. The State was required to prove only that appellant possessed a firearm "at any location other than the premises at which [appellant] lived." Tex. Penal Code § 46.04(a)(2). The record evidence, summarized above, proved that allegation. We conclude there was no variance between the allegation and the proof offered by the State. *See Hogue v. State*, 711 S.W.2d 9, 14 (Tex. Crim. App. 1986) ("We fail to see how the wording of the indictment, although not grammatically correct, misled or confused appellant."); *Coleman v. State*, 631 S.W.3d 744, 755 (Tex. App.—

7

Houston [14th Dist.] 2021, pet. ref'd) (holding that while the defendant generally attacked the sufficiency of the evidence supporting his conviction, he did "not assert that the indictment failed to sufficiently inform him of the charge against him to allow him to prepare an adequate defense at trial or subjected him to the risk of being prosecuted twice for the same offense.").

To the extent appellant argues that the evidence is insufficient because appellant was homeless and living in his vehicle and therefore the State did not prove the allegation that he possessed a firearm at a location other than the premises where he lived, we again disagree. In the present case, the evidence was undisputed that appellant had been convicted of a felony. The evidence was also undisputed that appellant possessed a firearm in the vehicle he was driving when he was stopped by Sergeant Macik. Having reviewed the entire record, we conclude there is no evidence in the record that appellant was homeless and living in his vehicle when he was stopped. As pointed out above, appellant testified that at the time he was stopped, he was living at his mother's residence in Texas City. While he did testify that he occasionally slept in his vehicle at his place of employment, that does not transform his vehicle into his residence. There was also evidence that his driver's license showed his mother's residence as the place where he resided and that is the address where he registered his vehicle. Based on the evidence in the record, we conclude the jury could have reasonably found that appellant was living at his mother's residence, not in his vehicle, and therefore possessed a firearm at a location where he did not live.

Even if the evidence conclusively established appellant was living in his automobile at the time of his arrest, the evidence would still be sufficient because "the obvious intent of the statute proscribing possession of firearms by convicted felons is to keep violent offenders from going about with firearms." *Lucas v. State*,

8

791 S.W.2d 35, 64 (Tex. Crim. App. 1989). By statute, a convicted felon is "not entitled to possess a firearm wherever they are or wherever they stay. They may only possess a firearm where they live, within the meaning and intent of the statute." *Nesbit v. State*, 720 S.W.2d 888, 891 (Tex. App.—Austin 1986, no pet.). As a result, we conclude that appellant's vehicle could not serve as a "premises" under Section 46.04 of the Penal Code. *See id.* ("Failure to have a place to live cannot transform an ordinary pickup into a premise for living simply because one may sleep in it."). We overrule appellant's first issue.

## II. Charge Error

Appellant asserts in his second issue that the trial court reversibly erred when it defined "premises" in the jury charge as a "building or a portion of a building." Appellant objected in the trial court that the term should be left undefined because the statute prohibiting felons such as appellant from possessing firearms "at any location other than the premises at which the person lives" does not define the term "premises." The trial court overruled appellant's objection.

### A. Standard of review and applicable law

In a criminal case, we review complaints of jury charge error in two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we determine whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Second, we review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *Id.* at 743–44.

If a jury charge is erroneous, the harm analysis hinges upon whether a defendant objected to the charge. *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see also Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006). If a defendant, like appellant did here, objected to an erroneous jury

9

charge, reversal is required if we find "some harm" to his rights. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)); *Ngo*, 175 S.W.3d at 743. Under *Almanza*, the record must show that the charge error caused the defendant actual, rather than merely theoretical, harm. *Ngo*, 175 S.W.3d at 750. In evaluating whether a defendant was harmed by an erroneous jury instruction, the degree of harm must be measured by the following factors: (1) the entire jury charge; (2) the state of the evidence; (3) the parties' arguments; and (4) all other relevant record information. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015); *see French v. State*, 563 S.W.3d 228, 237 (Tex. Crim. App. 2018) ("Whether jury charge error is preserved or not, the degree of harm resulting from the error must be measured in light of all four factors identified in *Almanza*."). Neither party has the burden to show harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

The trial court's charge must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *see* Tex. Code Crim. Proc. art. 36.14. "Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). The law applicable to the case includes statutory definitions that affect the meaning of the elements of the offense. *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *Lovings v. State*, 376 S.W.3d 328, 337 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "A trial court has broad discretion in submitting proper definitions and explanatory phrases to the jury." *Nejnaoui v. State*, 44 S.W.3d 111, 119 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Proper instructions are those which help the jury in answering the questions and which find support in the evidence

and the inferences to be drawn from the evidence. *Id.* "Nevertheless, the trial court must define any legal phrase that a jury must necessarily use in properly resolving the issues, and provide the statutory definition, if available." *Id.* "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion." *Reeves*, 420 S.W.3d at 818.

Assuming for purposes of this issue on appeal that the trial court erred when it included the challenged definition of "premises" in the charge, we turn to whether appellant suffered some actual harm from the trial court's decision. Appellant objected to the trial court's definition of "premises" as a "building or a portion of a building." Appellant argued that the trial court should leave "premises" undefined and allow the jury to apply the commonly understood meaning of the word. "Premises" is defined as "a piece of land with the structures on it." *Merriam-Webster Dictionary New Edition* 567 (2004). Because the definition the trial court included in the charge almost exactly matches the commonly understood meaning of the term, we conclude appellant did not suffer any harm as a result of the trial court's use of the definition over his objection. *See Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983) (stating that when a term is left undefined, "it is assumed the jury would consider the commonly understood meaning in its deliberations"); *cf. Lovings*, 376 S.W.3d at 338 (concluding there was no harm because, "on the facts of this case, the commonly understood meaning of 'without consent' closely resembles the applicable statutory definitions and would not have confused the jury or caused the jury to misapply the law."). We overrule appellant's second issue.

11

## CONCLUSION

Having overruled appellant's issues raised in this appeal, we affirm the trial court's judgment.

/s/    Jerry Zimmerer
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.

Publish — TEX. R. APP. P. 47.2(b).