**Opinion filed June 16, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00166-CR

_____

### ANDRES GUTIERREZ, III, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 132nd District Court**

**Scurry County, Texas**

**Trial Court Cause No. 10740**

## M E M O R A N D U M   O P I N I O N

The jury convicted Andres Gutierrez, III, of burglary of a building. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2019). Appellant pleaded "true" to two prior felony convictions alleged by the State for enhancement purposes. The jury assessed Appellant's punishment at confinement for a term of ten years in the Institutional Division of the Texas Department of Criminal Justice and it assessed a fine of $5,000. Appellant challenges his conviction in three issues. We affirm.

*Factual Background*

On November 15, 2019, Huey Jackson worked as the office manager of A&W Motors in Snyder. He testified that he locked the front door of the business at 1:45 p.m. and left to go to Walmart to pick up some office supplies. Upon his return to the business around 2:15 or 2:20 p.m., he discovered that the front door of the business was open. Jackson thought that the owner of the business, Anthony Wells, might be inside the building. However, Jackson discovered Appellant sitting at Wells's desk "digging through the drawers."

Jackson testified that Appellant had visited A&W Motors on the previous day saying that A&W Motors "owed" him a vehicle because he paid it off. Jackson further testified that Appellant also made claims to a vehicle on November 15. Jackson stated that Appellant was "out of it" and claimed to be the owner of A&W Motors. Jackson testified that Appellant appeared to be looking for keys and that he was holding a pair of keys that Jackson believed to have been taken from Wells's desk.

Appellant and Jackson exited the store while waiting for the police. Jackson testified that Appellant maintained possession of the keys as he exited the building and that, once outside, Appellant presented to Jackson an old driver's license belonging to Wells that had been in Wells's desk. Jackson believed that the keys were for a vehicle. Appellant continued to assert that he was the owner of the business.

Officer Markkus Tipton was the first officer on the scene. He observed Jackson and Appellant arguing. Officer Tipton testified that Appellant told him he was trying to get the keys to his pickup. Appellant also informed Officer Tipton that he was the President of the United States and the owner of A&W Motors. Officer Tipton observed two keys on a key ring in Appellant's hand, and Appellant told

other officers that the keys were to the building. Officer Tipton and other officers also observed pry marks on the front door of the business, which indicated that a forced entry was made. Officer Tipton believed that Appellant was intoxicated on narcotics.

Officer Ryan Reeves also responded to A&W Motors. He knew Appellant from prior encounters with him. Officer Reeves testified that Appellant was holding a set of keys. Appellant told him that they were "his" keys to the business. However, the keys did not work on the doors. Officer Reeves stated that Jackson said that the keys were to some old padlocks. Officer Reeves also observed tool marks on the front door.

Appellant testified in his own defense during the guilt/innocence phase. He testified that, on the date of the offense, he had been up for four days using methamphetamine and that he was not thinking straight. Appellant believed that he owned A&W Motors. He acknowledged using tools to forcibly open the front door. Appellant testified that he was not looking for anything inside the building and that he did not go through the drawers of Wells's desk. He picked up the keys that he was holding because he thought they were keys for the front door. Appellant also testified that he told Jackson that he was "fired" when he entered the building. Appellant also acknowledged coming to the business on the previous day; however, he stated that his focus was not on a single vehicle, but rather the entire business. Appellant denied ever having Wells's ID and he denied stealing anything from the business. Appellant stated that he only wanted to establish that he "owned" the business.

*Analysis*

In his third issue, Appellant challenges the sufficiency of the evidence supporting his conviction. He contends that the State failed to prove that he

committed either theft or attempted theft. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We measure sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The indictment charged Appellant with intentionally or knowingly entering a building or a portion of a building, "not then open to the public," without the effective consent of the owner and "attempt[ing] to commit or committ[ing] theft of property." Section 30.02(a) of the Penal Code provides that a person commits burglary if, without the effect consent of the owner, the person:

> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
>
> (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or
>
> (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

PENAL § 30.02(a). The parties disagree about which particular subsection of Section 30.02(a) that Appellant was charged with violating. Appellant contends that he was charged under subsection (3) because the indictment charged him with committing theft or attempted theft after he entered the building. Conversely, the State asserts that Appellant was charged under subsection (1) because the indictment alleged that the building was not then open to the public.

Under subsections (1) and (2), the statute requires proof of intent to commit a felony, theft, or assault at the time of entry. *Daniel v. State*, No. 07-17-00216-CR, 2018 WL 6581507, at *3 (Tex. App.—Amarillo Dec. 13, 2018, no pet.) (mem. op., not designated for publication). Intent at the time of entry is not an element of the offense under subsection (3). *Id.* Instead, subsection (3) requires the State to prove that, while inside the habitation or building, the defendant committed or attempted to commit a felony, theft, or an assault. *See id.* Here, the indictment charged Appellant with an offense under subsection (3) because it alleged that he entered the building and then committed or attempted to commit theft. *See id.* at *1 n.1.

5

Appellant directs our attention to the element of theft. As a part of his sufficiency argument, he asserts that the trial court's charge to the jury did not include the statutory definitions of "theft" or "attempted theft." Appellant's reliance on this alleged omission is misplaced, however, because under *Malik*, we measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *See* 953 S.W.2d at 240.

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. PENAL § 31.03(a). A person commits attempted theft if he has the intent to commit theft and engages in an act amounting to more than mere preparation to commit theft, but he fails to effect the commission of theft. *Id.*; PENAL § 15.01(a); *McCay v. State*, 476 S.W.3d 640, 645 (Tex. App.—Dallas 2015, pet. ref'd). Jackson testified that Appellant exited the building with two items of property, a set of keys and an old ID belonging to Wells, both of which he removed from the business. Although the police officers were unable to find the old ID after they arrested Appellant, they all confirmed that Appellant was holding the keys that he removed from the business. Appellant told the officers that the keys were "his" keys to the business. Appellant also acknowledged taking the keys out of the business. Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Appellant committed theft of property after unlawfully entering the building of A&W Motors. *See Jackson*, 443 U.S. at 319. We overrule Appellant's third issue.

In his first issue, Appellant asserts that the trial court erred by not including the statutory definitions for theft and attempted theft in the court's charge. He cites the Texas Pattern Jury Charges in support of this proposition. *See* Comm. on Pattern Jury Charges, State Bar of Texas, *Texas Criminal Pattern Jury Charges: Crimes Against Persons and Property* PJC 91.4 (2020) (Instruction—Burglary of Building

by Entry and Commission of Offense).  The pattern jury charges include the statutory definitions of theft and attempted theft for an offense under Section 30.02(a)(3).  *See id.*  We note that Appellant did not object to the omission of these definitions.

A review of alleged jury-charge error involves a two-step analysis.  *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).  We must first determine whether the charge contained any actual error.  *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32.  If there was actual error, we must next determine whether the error resulted in sufficient harm to require reversal.  *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32.  If an appellant fails to object to or present a properly requested jury charge, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*."  *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Because Appellant did not object to the jury charge, reversal is required only if the error results in egregious harm.  *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).  "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."  *Id.*  "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'"  *Id.* (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)).  "An egregious harm determination must be based on a finding of actual rather than theoretical harm."  *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

Egregious harm is only shown when the error "created such harm that [the appellant] 'has not had a fair and impartial trial.'"  *Almanza*, 686 S.W.2d at 171.  In *Almanza*, the Texas Court of Criminal Appeals outlined four factors that a reviewing

court should consider when determining whether a jury-charge error resulted in egregious harm: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Villarreal*, 453 S.W.3d at 433.

Under Article 36.14, the trial court is required to give the jury a written charge "setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). "As 'law applicable to the case,' the definitions of words or phrases defined by statute must be included in the jury charge." *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017) (citing *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009), for the proposition that the jury must be instructed regarding the statutory definitions affecting the meaning of an element of the offense). Because theft and attempted theft are statutorily defined, those definitions should have been included in the trial court's charge to the jury.

Appellant asserts that he suffered egregious harm because of the lack of the statutory definitions of theft and attempted theft in the charge. The Beaumont Court of Appeals addressed an analogous situation in *Laday v. State*, 690 S.W.2d 53, 54 (Tex. App.—Beaumont 1985, no pet.). There, the trial court's charge omitted the statutory definition of theft for a burglary under Section 30.02(a)(1). *Id.* The court concluded that, in the absence of a statutory definition of theft, it is assumed that the jury would consider the commonly understood meaning of the term in its deliberations. *Id.* at 56 (citing *Olveda v. State*, 650 S.W.2d 408 (Tex. Crim. App. 1983); *Rohlfing v. State*, 612 S.W.2d 598 (Tex. Crim. App. 1981)). The court in *Laday* held that the defendant did not suffer egregious harm because the evidence clearly proved each element of theft. *Id.* at 56.

8

Appellant contends that the prosecutor's closing arguments "[muddied] the waters" because he made reference to Appellant's "intent to steal when he broke in." Appellant asserts that this argument permitted the jury to focus on burglary under Section 30.02(a)(1) rather than the offense with which he was charged. However, the application paragraph of the trial court's charge limited the jury's focus to an offense under Section 30.02.(a)(3) because it provided as follows:

> Now, if you find from the evidence beyond a reasonable doubt, that the defendant, ANDRES GUTIERREZ, III, on or about the 15th day of November, 2019, in Scurry County, Texas, did then and there, intentionally or knowingly enter a building or a portion of a building, not then open to the public, without the effective consent of Huey Jackson, the owner thereof, and attempted to commit or committed theft of property, then you will find the defendant guilty.

As held in *Laday*, we presume that the jury applied the common meaning of theft and attempted theft in its deliberations. In this regard, we note that the common meaning of theft and its statutory definition do not vary greatly. Considering the charge itself, the state of the evidence, the arguments of counsel, and the other relevant information in the record, we conclude that the absence of the statutory definition of theft and attempted theft did not create such harm that Appellant did not have a fair and impartial trial. *See Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. We overrule Appellant's first issue.

In his second issue, Appellant asserts that he received ineffective assistance of counsel based on his trial counsel's failure to object to the omission of the statutory definitions for theft and attempted theft. To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

We note at the outset that Appellant did not file a motion for new trial. Thus, trial counsel has not had an opportunity to explain or defend his trial strategy in response to the matter that Appellant contends was deficient. On a record that does not reveal counsel's reasoning, we "must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that [counsel] 'made all significant decisions in the exercise of reasonable professional judgment.'" *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992) (quoting *Strickland*, 466 U.S. at 690); *see State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim.

App. 2008); *Screws v. State*, 630 S.W.3d 158, 164–65 (Tex. App.—Eastland 2020, no pet.).

Even if we assume that trial counsel was deficient for not objecting to the trial court's charge, the record does not indicate that there is a reasonable probability that the outcome of trial would have been different but for counsel's errors. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. We have previously determined that the evidence was sufficient to support Appellant's conviction for a burglary offense under Section 30.02(a)(3). We have also determined that Appellant was not egregiously harmed by the omission of the statutory definitions for theft and attempted theft. The record does not show a reasonable probability that the outcome of trial would have been different had the trial court included the statutory definitions in the court's charge. We overrule Appellant's second issue.

### This Court's Ruling

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


June 16, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.